UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JAMES WILLIAM MEDINA-
RODRIGUEZ,

        Plaintiff,

v.

UNKNOWN CROMPTON,

        Defendant.
_____/

Case No. 1:22-cv-970

Honorable Sally J. Berens

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 2) and was granted leave to proceed *in forma pauperis* (ECF No. 4). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

    This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

    Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344,

347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Dr. Unknown Crompton.

In Plaintiff's complaint, he alleges that on March 31, 2020, he was evaluated by nurse Briske (not a party) "due to testicular pain as well as a growth forming on his right testicle." (Compl., ECF No. 1, PageID.4.)[2] Plaintiff states that he informed nurse Briske that "the pain on

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's filings.

his right testicle had begun 2 weeks prior and not only was the growth of the lump adding in size but as well as the pain." (*Id.*) Nurse Briske "documented the assessment and encouraged the Plaintiff to drink more water." (*Id.*) Plaintiff states that the pain had made it "impossible to sleep, exercise and caused difficulty walking." (*Id.*)

On April 1, 2020, Plaintiff was examined by nurse practitioner Dalton (not a party). (*Id.*; ECF No. 1-3, PageID.16.) Upon evaluation, nurse practitioner Dalton "diagnosed the Plaintiff with hydrocele." (Compl., ECF No. 1, PageID.4.) Plaintiff states that despite this diagnosis, "he was not given any medication." (*Id.*) Plaintiff alleges that "[t]he pain remained consistent so the Plaintiff again sought medical attention from [ECF] healthcare services." (*Id.*)

Subsequently, Plaintiff's pain had still "not subsided so he wrote the nurse practitioner." (*Id.*) On July 23, 2020, nurse practitioner Dalton "made note that the Plaintiff would need . . . to be seen by [ECF] doctor Crompton." (*Id.*) Plaintiff had an appointment with Defendant Crompton on August 20, 2020. (*Id.*) Defendant Crompton "acknowledged the [nurse] practitioner[']s diagnosis of hyd[ro]cele and prescribed the Plaintiff 400mg of Ibuprofen." (*Id.*)

Plaintiff states that "after consuming his entire prescription as directed, the pain had worsened, so the Plaintiff wrote health care requesting information on his diagnos[is,] . . . a refill of his prescription and to be evaluated once again." (*Id.*) Plaintiff states that the prescription was denied, but he had an evaluation with nurse Briske on September 14, 2020. (*Id.*) Plaintiff informed nurse Briske that he "now had a ripping pain," and following the evaluation, nurse Briske requested a follow-up appointment for Plaintiff. (*Id.*) Plaintiff states that he "continued to writ[e] healthcare kites to the Defendant asking him for information on [Plaintiff's] diagnoses and a request for a[n] ultrasound." (*Id.*) Plaintiff claims that Defendant denied him "proper treatment so he sought redress t[hrough] the prisoner grievance [process]." (*Id.*) Plaintiff's grievance was denied at each

4

step. (*Id.*) Plaintiff contends that Defendant Crompton "refused to refill" Plaintiff's medication, "as well as provide[] the professional assessment for his hydrocele leaving the Plaintiff in serious pain." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendant Crompton violated Plaintiff's First Amendment rights by retaliating against him and his Eighth Amendment rights by providing inadequate medical care. As relief, Plaintiff seeks compensatory damages in the amount of $750,000.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation Claim

Plaintiff alleges that Defendant Crompton retaliated against Plaintiff "for writing a grievance on [Defendant Crompton]." (Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Protected Conduct

With respect to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.

6

*Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references filing at least one grievance. Because the filing of a non-frivolous grievance constitutes protected activity, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has stated the first element of a retaliation claim.

### 2. Adverse Action

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff does not specifically identify which actions he believes that Defendant Crompton took against him in retaliation for Plaintiff's grievances. Nevertheless, liberally construing *pro se* Plaintiff's complaint, as the Court is required to do, it appears that Plaintiff believes Defendant Crompton "neglected . . . Plaintiff[']s healthcare needs all together" after Plaintiff filed a grievance about the matter. (Compl., ECF No. 1, PageID.5.) Plaintiff also references Defendant Crompton's failure to refill Plaintiff's medication. (*Id.*, PageID.4.)

The United States Court of Appeals for the Sixth Circuit has held that the denial of, or a delay in, medical treatment—including the "discontinuance of medication"—may constitute an adverse action. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (citation omitted) (discussing that a "delay in treatment and discontinuance of medication would likely deter a prisoner . . . who believed he needed the medication to avoid the symptoms from which he allegedly suffered"). As such, at this stage of the proceedings, the Court assumes, without deciding, that the denial of medical care, as alleged by Plaintiff, constitutes an adverse action.

7

### 3. Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. As explained below, Plaintiff's allegations regarding this third element of a First Amendment retaliation claim fall short.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he filed at least one grievance regarding his medical care before Defendant Crompton took the allegedly adverse action against Plaintiff—suggesting temporal proximity—nothing in the complaint suggests that Defendant Crompton was aware that Plaintiff had filed this grievance. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendant Crompton was motivated by any protected conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Furthermore, such "conclusory allegations of retaliatory motive

8

'unsupported by material facts'" do not state a claim under Section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, because Plaintiff fails to allege any facts to suggest that Defendant Crompton was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against Defendant Crompton.

### B. Eighth Amendment Medical Care Claim

Plaintiff alleges that Defendant Crompton violated his Eighth Amendment rights by providing inadequate medical care. (*See* Compl., ECF No. 1, PageID.4–5.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words,

9

the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal

courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Objective Component

Here, Plaintiff alleges that a non-party nurse practitioner "diagnosed the Plaintiff with hydrocele." (Compl., ECF No. 1, PageID.4.) Plaintiff states that he had severe pain associated with this condition, and the pain at times had made it "impossible to sleep, exercise and caused difficulty walking." (*Id.*) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### 2. Subjective Component

Based on the facts alleged by Plaintiff in his complaint, it is apparent that he received medical treatment when he alerted medical staff to his concerns, and that Defendant Crompton did not disregard a substantial risk of serious harm to Plaintiff.

As an initial matter, the facts Plaintiff alleged in his complaint do not suggest that Defendant Crompton had substantial involvement in the events about which Plaintiff complains.

For example, Plaintiff was examined by a non-party nurse practitioner on April 1, 2020, and it was at this appointment that the non-party nurse practitioner "diagnosed the Plaintiff with hydrocele." (Compl., ECF No. 1, PageID.4.) Plaintiff states that, despite this diagnosis, he was not provided any medication, and "[t]he pain remained consistent" after the April 1, 2020, appointment, "so the Plaintiff again sought medical attention from [ECF] healthcare services." (*Id.*) However, Plaintiff does not allege any facts suggesting that Defendant Crompton had any involvement in Plaintiff's medical care during this time period. (*See id.*) *See also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Based on the facts alleged, Plaintiff's first interaction with Defendant Crompton occurred during a scheduled medical appointment on August 20, 2020. (*Id.*) The appointment with Defendant Crompton had been scheduled during Plaintiff's July 23, 2020, appointment with the nurse practitioner. (*Id.*) Although it appears that Plaintiff may have wished to have his appointment with Defendant Crompton at an earlier date following the nurse practitioner's referral, Plaintiff fails to allege any facts to suggest that this approximately one-month period between the two appointments resulted in any harm to him. Indeed, Plaintiff alleges no facts regarding his condition between the July 23, 2020 appointment and the August 20, 2020 appointment. That is insufficient; ambiguity does not support a claim, factual allegations do. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

At Plaintiff's August 20, 2020 appointment with Defendant Crompton, Defendant Crompton "acknowledged the [nurse] practitioner['s] diagnosis of hyd[ro]cele and prescribed the

13

Plaintiff 400mg of Ibuprofen." (Compl., ECF No. 1, PageID.4.) Therefore, with respect to Defendant Crompton's involvement in Plaintiff's medical care, Plaintiff's allegations show that when he was evaluated by Defendant Crompton, Defendant Crompton was responsive to Plaintiff's medical needs. (*See id.*) Plaintiff faults Defendant Crompton for failing to renew Plaintiff's medication after Plaintiff finished the initial prescription and "the pain had worsened"; however, besides Plaintiff's conclusory assertion that he requested such renewal from "health care," Plaintiff fails to allege sufficient *facts* to show that Defendant Crompton was aware of Plaintiff's renewal request, let alone that Defendant Crompton was involved in the renewal denial. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008) (discussing that a claimed constitutional violation must be based upon active unconstitutional behavior); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *see also Iqbal*, 556 U.S. at 676.

Furthermore, Plaintiff states that following his September 14, 2020 appointment with a non-party nurse, he "continued to writ[e] healthcare kites" requesting information about his diagnosis and requesting an ultrasound. (Compl., ECF No. 1, PageID.4.) Assuming, without deciding, that Defendant Crompton would have received Plaintiff's healthcare kites, "the question whether an X-ray or additional diagnostic techniques[, such as an ultrasound,] or forms of treatment is indicated is a classic example of a matter for medical judgment[;] [a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107.

In summary, based on the facts Plaintiff alleged in his complaint, it appears that Plaintiff disagrees with ECF medical staff's treatment decisions during the time period at issue in the complaint. However, "a patient's disagreement with his physicians [or other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not

14

cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)).

Accordingly, for these reasons, because Plaintiff has failed to allege facts showing that Defendant Crompton was deliberately indifferent or that the treatment was "so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605 (citation omitted), Plaintiff's Eighth Amendment claim against Defendant Crompton will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma*

15

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 3, 2023                         /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge